George ZELINSKI, Jr. and Pinbreaker,
Inc., Plaintiffs,

v.

BRUNSWICK CORPORATION, and
Illinois Corporation, Defendant.

No. 97 C 0571.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 5, 1997.

Stephen G. Kehoe, Chicago, IL, for George Zelinski, Jr., Pinbreaker, Inc.

Michael O. Warnecke, David R. Melton, Craig A. Woods, Mayer, Brown & Platt, Chicago, IL, for Brunswick Corporation.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

George Zelinski, Jr. and Pinbreaker, Inc. (collectively "plaintiffs") sue Brunswick Corporation ("Brunswick") for patent infringement. The parties have filed cross-motions for summary judgment.

### BACKGROUND

George Zelinski, Jr. owns United States Patent No. 5,046,731 ("the '731 patent"), entitled "Bowling Ball." Pinbreaker, Inc. is the exclusive licensee of the '731 patent, which issued on September 10, 1991. As part of its Phantom series of bowling balls, defendant Brunswick produced, marketed and sold the StealthCore I™ and StealthCore II bowling balls. Plaintiffs allege Brunswick's StealthCore I™ and II bowling balls infringe claim 1 (and dependent claims 2 through 14) of the '731 patent. Claim 1 of the '731 patent reads as follows:

A bowling ball having a spherical mass of preselected density and a spherical surface equidistant from a center of the spherical mass, the improvement being a weight block of a density, greater than said preselected density, in which said weight block comprises:

a first elongate section having a pair of opposite ends with an intermediate portion there between adjacent the spherical surface; and

another elongate section having an axis of symmetry extending in a direction generally transverse of the first elongate section and extending from the intermediate portion and located between the center of the spherical mass and the first elongate section.

Pl. 12(M) ¶ 7.

The design of Brunswick's StealthCore I™ and II bowling balls includes a spherical outer shell of polyurethane, a spherical center, an annular ring which encircles the

spherical center, and an "eccentric weight" atop the annular ring. Def. 12(M) ¶¶ 11, 12; Pl. 12(N) ¶¶ 11, 12.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

A movant in a patent case, as in any case, is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795 (Fed. Cir.1990); *see generally* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206, 1209 (7th Cir.1993). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Fisher v. Transco Services–Milwaukee, Inc.*, 979 F.2d 1239, 1242 (7th Cir.1992). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Stewart v. McGinnis*, 5 F.3d 1031, 1033 (7th Cir.1993), *cert. denied*, 510 U.S. 1121, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994).

### II. LITERAL INFRINGEMENT: CLAIM CONSTRUCTION

■ To prevail under a theory of literal infringement, plaintiffs must prove that each and every limitation of independent claim 1 is matched exactly by a corresponding element in Brunswick's StealthCore I™ and II bowling balls. *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 547 (Fed.Cir.1994). Any deviation from the claim limitations precludes a finding of literal infringement. *Id.* If claim 1 is not infringed, it follows that none of its dependent claims are infringed. *Wahpeton*

*Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed.Cir.1989).

■ Determining whether the Stealth-Core I™ and II bowling balls infringe claim 1 of the '731 patent entails a two-step analysis. First, claim 1 must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused products to determine whether infringement has occurred. *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576 (Fed.Cir.1993). The first step, claim construction, is a question of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 1396, 134 L.Ed.2d 577 (1996). The second step, applying the claim construction to the accused device, is a question of fact. Where, as here, the parties do not dispute any facts relevant to the question of literal infringement but disagree over the proper claim construction, the question of literal infringement collapses into claim construction and is amenable to summary judgment. *Athletic Alternatives, Inc. v.. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed.Cir.1996).

■ The parties dispute the meaning of the words "spherical mass" as used in the preamble to claim 1 of the '731 patent:

A bowling ball having a spherical mass of preselected density and a spherical surface equidistant from a center of the spherical mass....

In construing claim 1, the court should look first to the intrinsic evidence of record: the '731 patent itself, including the claims and the specification. *Vitronics Corp. v. Conceptronic, Inc. .*, 90 F.3d 1576, 1582 (Fed. Cir.1996). Brunswick asserts a "spherical mass" necessarily includes the core of the sphere, especially where reference is made to the "center" of the spherical mass. Plaintiffs respond that the center of a spherical mass is a geometric position, not a tangible, physical object. Thus, a hollow sphere still has a geometric center at the point where the radii (extending in from the surface of the sphere) converge. Moreover, plaintiffs argue that the '731 patent elsewhere identifies the spherical mass as "mass 12" and the weight core as "weight core 34." Plaintiffs argue that the independent element numbers, to-

gether with the fact that spherical mass 12 is shown in the '731 specification as a polyurethane shell, indicate that "spherical mass" as used in claim 1 does not include the core of the sphere. Plaintiffs' interpretation of "spherical mass" is plainly correct. Accordingly, "spherical mass" is interpreted such that it does not include the core of the sphere.

■ The parties also dispute the meaning of the word "located" in claim 1 of the '731 patent, as it is used in the following clause:

> another elongate section having an axis of symmetry extending in a direction generally transverse of the first elongate section and located between the center of the spherical mass and the first elongate section.

Pl. 12(M) ¶ 7. Again, in construing a claim the court first looks to the intrinsic evidence of record. *Vitronics*, 90 F.3d at 1582. Neither the claims nor the specification define the term "located," so it should be given its ordinary and accustomed meaning. *Lantech*, 32 F.3d at 547. Brunswick argues "located" means *wholly* or *entirely* located; that is, for a second elongate section to be located between the center of the spherical mass and the first elongate section, the second elongate section must be located *only* between the center of the spherical mass and the first elongate section. Plaintiffs respond that Brunswick's interpretation of "located" is too narrow; plaintiffs suggest that a second elongate section is also located between the center of the spherical mass and the first elongate section when only a *segment* of the second elongate section is located between the center of the spherical mass and the first elongate section.

In support of their broader claim construction, plaintiffs offer the following analogy:

> [I]n the city of Chicago, there is a subway line between Jackson and Monroe streets (the Blue Line). This line is located between Jackson and Monroe streets. However, the Blue Line is not entirely located between Jackson and Monroe streets. The Blue Line extends out northwest to O'Hare airport and west to Oak Park. The Defendant's argument of "located" mean-

ing "entirely located" implies that to be located between Jackson and Monroe streets means that the subway cannot extend beyond those streets, and is "entirely located" between them. Such a conclusion is absurd.

Pl. Reply at p. 5. Were that defining words could be so easy. Alas, although the court must give "located" its ordinary and accustomed meaning, the ordinary and accustomed meaning of "located ."—like that of many words—differs with the context and manner in which it used. "Located" can be used differently depending on the precision that is required by the audience or desired by the speaker. To be sure, plaintiffs' subway line analogy highlights one way in which we use "located." If a person asks another person in downtown Chicago where the Blue Line is located, the second person would likely respond, "between Jackson and Monroe." Indeed, the first person might be surprised if the second person hastened to add, "but it extends out northwest to O'Hare." That additional response would likely provide more precision and information than the first person sought in asking the question.

However, we also use "located" to convey the more narrow meaning suggested by Brunswick. If the first person asked "in what state is the Empire State Building located?", the second person might respond, "in New York," and the first person would understand that the Empire State Building was located entirely within New York. If the first person asked where the Sears Tower is located, the second person might respond, "between Jackson and Adams," and the first person would not expect to find the Sears Tower elsewhere. The point of the different analogies should be plain: in interpreting "located," context matters; both Brunswick's and plaintiffs' efforts to impart a universally broad or narrow meaning to the word "located" are thus futile.

The parties do not address the effect of the present context on the meaning of "located" at all. Instead, they present various dictionary definitions of "locate." According to the dictionaries, to locate means:

> to determine or indicate the place, site, or limits of;

to set or establish in a particular spot;

to station, situate, or place;

to fix or establish in a particular spot or position;

to show the position of.

Brunswick can point to elements of these definitions that favor its interpretation, particularly the references to "limits" and "particular" spots or positions. Plaintiffs respond that one can "situate" or "show the position of" an object without necessarily communicating that the object is *entirely* located in a particular spot or position. Of course, both parties can find support in the dictionary, because the dictionary definitions present multiple meanings; dictionaries cannot cure ambiguities.

Plaintiffs suggest that because "located" in claim 1 is not preceded by "entirely" (or one of its synonyms), the broader meaning of "located" is the required interpretation. This argument would have more force if elsewhere in the claims or specification for the '731 patent, words like "entirely" were used to qualify or modify the meaning of "located." However, the '731 patent provides no evidence of any pattern of usage with respect to the word "located." Under these circumstances, plaintiffs' argument—that the broader interpretation of "located" is required because the word "entirely" does not precede it—begs the question. The problem is defining the meaning of "located"; as the preceding discussion makes plain, that meaning depends on context.

Here, "located" is used to define the relative spatial position and orientation of sections of a weight block situated inside a bowling ball. Claim 1 of the '731 patent describes a weight block with

[a second] elongate section having an axis of symmetry extending in a direction generally transverse of the first elongate section and extending from the intermediate portion [of the first elongate section] and located between the center of the spherical mass and the first elongate section.

Pl. 12(M) ¶ 7. Reading the highly precise language of this description, it seems unlikely that the claim is meant to communicate that only some of the second elongate section is located between the center of the spherical mass and the first elongate section. Rather, it seems probable that "located" is used in its more narrow sense, in order to establish a defined boundary, particular spot or position for the second elongate section. If "located" is used in its more precise or narrow sense— that is, *entirely* located—then the meaning of the "located between" clause is direct and clear: the second elongate section is entirely located between the center of the spherical mass and the first elongate section.

However, if "located" is used in its more imprecise or broader sense—that is, not *entirely* located—then it becomes difficult to explain the purpose and the choice of the language "located between the center of the spherical mass and the first elongate section." The claim already states (1) the second elongate section has an axis of symmetry extending in a direction generally transverse of (*i.e.*, perpendicular to) the first elongate section and (2) the second elongate section extends from the intermediate portion of the first elongate section. If "located" does not communicate the boundaries of the second elongate section, then there is only one other possible purpose of the "located between" clause. That purpose would be to indicate, from a starting position on or near the intermediate portion of the first elongate section, *which direction(s)* the second elongate section extends along its (generally) transverse axis of symmetry. That is, under plaintiffs' construction of the claim, the only information provided by the "located between" clause is that the second elongate section extends toward the center of the spherical mass, not toward the surface of the bowling ball. The "located between" clause would be an exceedingly awkward, indirect, and risky way to communicate that the second elongate section extends toward the center of the spherical mass and *possibly beyond the center,* especially given the previously discussed ambiguity of the words "located between." Because Brunswick's interpretation gives the "located between" clause a more direct and clear meaning in this context, the clause should be read to define the limits of the location of the second elongate section.

■ Even assuming the meaning of the "located between" clause is still ambiguous, a narrow reading which excludes ambiguously covered subject matter must be adopted. *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572, 1581 (Fed.Cir. 1996) (citing *Athletic Alternatives*, 73 F.3d at 1581). Plaintiffs urge that *Ethicon* is distinguishable because in that case ambiguity was introduced by different usage of a term in the claim, the specification, and the prosecution history of a patent. True, the facts creating ambiguity in *Ethicon* are not present in this case. The specification and prosecution history of the '731 patent do not offer inconsistent clues about the meaning of "located" as it is used in claim 1 (indeed, they offer no clues).

However, *Ethicon* does not indicate that its instruction to read ambiguous claims narrowly is applicable only where the identical (or similar) causes of ambiguity are present. Ambiguity can exist without inconsistent usage in the claim, specification, or prosecution history of a patent; a word can simply be ambiguous. In *Athletic Alternatives,* after all efforts at removing the ambiguity of a disputed term had failed, the Federal Circuit stated:

> Were we to allow AAI successfully to assert the broader of the two senses of "between" against Prince, we would undermine the fair notice function of the requirement that the patentee distinctly claim the subject matter disclosed in the patent from which he can exclude others temporarily. Where there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim having the narrower meaning, we consider the notice function of the claim to be best served by adopting the narrower reading.

*Athletic Alternatives*, 73 F.3d at 1581; *see generally* 35 U.S.C. § 112 (placing the drafting burden of distinctly claiming the subject matter on the patentee). Claim 1 of the '731 patent does not unambiguously cover bowling balls where the second elongate section is only partially located between the center of the spherical mass and the first elongate section. Accordingly, the court construes claim 1 of the '731 patent such that it requires the second elongate section to be entirely located between the center of the spherical mass and the first elongate section.

## III. LITERAL INFRINGEMENT: APPLICATION

■ The design of Brunswick's StealthCore I™ and II bowling balls includes a spherical outer shell of polyurethane, a spherical center or core, an annular ring which encircles the spherical core, and an "eccentric weight" atop the annular ring. Def. 12(M) ¶¶ 11, 12; Pl. 12(N) ¶¶ 11, 12. Brunswick argues it is entitled to a finding of no literal infringement because the spherical core, annular ring, and eccentric weight of the StealthCore I™ and II bowling balls have identical density. Brunswick's argument hinges on a construction of claim I that has been rejected. Because "spherical mass" as used in claim 1 does not include the core of the sphere, it is irrelevant that Brunswick's spherical core, annular ring, and eccentric weight have identical density. Only the relative density of the outer shell and the weight block is relevant. Accordingly, Brunswick's arguments based on density do not entitle it to summary judgment on the issue of literal infringement.

It is not seriously disputed that the eccentric top weight in the StealthCore I™ and II bowling balls corresponds to the first elongate section described in claim I of the '731 patent. At issue is whether the annular ring in the StealthCore I™ and II bowling balls corresponds to the second elongate section described in the '731 patent. The annular ring, as its name suggests, completely encircles the spherical core of the StealthCore I™ and II bowling balls. Under the construction of claim 1 adopted by this court, the annular ring is not a second elongate section located between the center of the spherical mass and the first elongate section. At least one half of the annular ring is not *located between* the center of the spherical mass and the first elongate section. Accordingly, plaintiffs cannot demonstrate that each and every limitation of independent claim I is matched exactly by a corresponding element in Brunswick's

StealthCore I™ and II bowling balls. *Lantech*, 32 F.3d at 547. Because any deviation from the claim limitations precludes a finding of literal infringement, Brunswick is entitled to summary judgment on the issue of literal infringement of claim 1. *Id.* Because claim 1 is not literally infringed, it follows that none of its dependent claims are literally infringed. *Wahpeton Canvas*, 870 F.2d at 1553.

## IV. DOCTRINE OF EQUIVALENTS

■ Where an accused device does not literally infringe a patented claim, a patentee may attempt to prove infringement pursuant to the doctrine of equivalents. Under the doctrine of equivalents, an accused product that differs from the claim, and thus does not literally infringe, nonetheless infringes if its difference from the patented claim is insubstantial from the perspective of a person of ordinary skill in the relevant art. *Athletic Alternatives*, 73 F.3d at 1581. However, liability for infringement "requires, without exception, that an accused product contain each limitation [of the claim] or its equivalent." *Id.* at 1582. An oft-cited test for equivalence is whether the accused product "performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

■ To summarize, claim 1 of the '731 patent states three limitations. First, it requires the weight block to be more dense than the spherical mass (elsewhere defined as the outer shell). The weight block in the accused balls is more dense than the outer shell. Second, claim 1 requires the weight block to have an elongate section "having a pair of opposite ends with an intermediate portion there between adjacent the spherical surface." The eccentric weight in the accused balls literally corresponds to the first elongate section described in the '731 patent. The only limitation in claim 1 of the '731 patent without a literal counterpart in the accused balls is the second elongate section. Thus, the remaining issue is whether the annular ring in the accused balls is equivalent to the second elongate section described in the '731 patent.

■ Brunswick asserts its StealthCore I™ and II bowling balls embody more than a mere "colorable" change over the '731 patent. Brunswick argues:

> Rather than a high-density, "t-shape" weight block in the top half of the ball and a separate core of a lower density, the StealthCore I™ and II balls contain a homogeneous, single-piece inner core with a shape defined by a spherical center, an annular ring and an eccentric top weight. This unique design, which itself is patented, is substantially outside the metes and bounds of the '731 patent.

Def.Mot. at p. 13. Claim 1 of the '731 patent does not require a "t-shape" weight block or an inner core of heterogeneous density, and Brunswick's patent is irrelevant to the issue of infringement of the '731 patent. More importantly, Brunswick's argument speaks only to the shape of the weight block design. The shape of the weight block precluded a finding of literal infringement, but the shape of the weight block does not preclude a finding of infringement under the doctrine of equivalents.

Rather, to prevail on this issue, Brunswick must point out the absence of evidence in the record directed to proving that the annular ring in the accused balls is equivalent to the second elongate section described in the '731 patent. Brunswick offers the following facts about the annular ring in its StealthCore I™ and II bowling balls:

> [T]he longitudinal axis of the annular ring defines a single axis of maximum moment of inertia, or dominant spin axis, significantly stronger than the axis of minimum moment of inertia and relatively independent of the position of the finger holes.... [P]rior art balls (including the ball disclosed in the '731 patent) ... lack a primary axis of rotation strong enough at the time of manufacture to remain the primary axis after the finger holes are drilled. As the StealthCore I™ and II balls roll down the lane, the spin axis migrates predictably from the spin axis initially imparted by the bowler to the dominant spin axis created by the annular ring. This unique axis migration causes dry portions of the ball to

come into contact with the oiled surface of the lane, thereby obtaining improved frictional contact and enabling achievement of the desired curved path in the ball trajectory.

Def. 12(M) ¶ 14 (citations omitted). To support these assertions, Brunswick cites the affidavit of William J. Wasserberger (the co-inventor of the accused balls) and the patent for the accused balls.

Plaintiffs respond that the second elongate section described in the '731 patent also creates a primary axis of rotation. To support these assertions, plaintiffs cite the following language from the '731 patent:

[t]he method [for drilling finger holes] includes the steps of determining the location of the plane of symmetry of the weight block and drilling the thumb and finger holes into the ball around the center axis to *have a preselected angular relationship to the plane of symmetry to achieve a desired breaking point for the ball.*

Pl. 12(N) ¶ 14 (emphasis added). Even assuming this language supports an inference that the second elongate section described in the '731 patent creates a primary axis of rotation, too many consecutive (and impermissible) inferences are required for this language to support a finding that the second elongate section enables migration of the axis of rotation *in the same way* or *with the same results* as the annular ring in the accused balls.

■■■ Plaintiffs bear the burden of proving that the annular ring in the accused bowing balls is equivalent to the second elongate section required by the '731 patent. Yet plaintiffs offer no factual evidence from which a jury can reasonably infer equivalence. Plaintiffs present the affidavit of Mr. Shifley, who conclusorily asserts, "Because there is literal infringement, there is infringement under the doctrine of equivalents. As to claim 4 specifically, there is infringement under the doctrine of equivalents even if there is no literal infringement." Pl.Ex. ¶ 80. As to everything but claim 4, Mr. Shifley's statements rest on an incorrect claim interpretation and therefore cannot create a factual dispute. As to claim 4, Mr.

Shifley's assertion is without any explanation and is too conclusory to constitute evidence sufficient to create a genuine factual dispute.

■■■ Plaintiffs state they "have not had the opportunity to take discovery in this case, as discovery is in progress, relative to ascertaining the functions of the StealthCore balls as compared to the '731 balls and would therefore deny the truth of those allegations of [Def. 12(M) ¶ 14] which would impart distinguishing features to the infringing balls' performance." Pl. 12(N) ¶ 14. Plaintiffs' failure to take sufficient discovery relevant to the doctrine of equivalents, by itself, cannot save them from summary judgment. Fed. R.Civ.P. 56(f) provides:

Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for the reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

"Rule 56(f) is intended as a safeguard against a premature grant of summary judgment ... thus[, courts] should construe the rule liberally and not find violations on rigid technical grounds." *King v. Cooke*, 26 F.3d 720, 727 (7th Cir.1994) (citing *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 918 (5th Cir.1992)). In *Wichita Falls*, the court stated:

Although it is preferred that non-movants present an affidavit to support a continuance of discovery, there is no stringent procedure that will bar litigants, access to further discovery. In order to trigger the rule non-movants need only submit an "equivalent statement preferably in writing" that conveys the need for additional discovery.

978 F.2d at 919.

Although paragraph 14 of plaintiffs' 12(N) statement communicates that "plaintiffs have not had the opportunity" to take discovery on the functioning of the bowling balls, plaintiffs do not explain the reasons why they have not had the opportunity to take that discovery.

Moreover, plaintiffs fully responded to the substance of Brunswick's doctrine of equivalents arguments and gave no other indication that they believed a ruling on the doctrine of equivalents issue would be premature on the present record. Apparently, plaintiffs hoped for a finding of literal infringement, and were prepared to stand by the language of the '731 patent if the court reached the doctrine of equivalents. Plaintiffs' strategy backfired. Even assuming plaintiffs were allowed to substitute a sentence in their 12(N) statement for a Rule 56(f) affidavit, plaintiffs fail to explain why they conducted *no* discovery on the function and performance of the bowling balls even after Brunswick moved for summary judgment on the doctrine of equivalents issue. Rule 56(f) explicitly requires that parties who seek a continuance for further discovery *state the reasons* for their inability to present facts essential to justify the parties' opposition to the motion for summary judgment. Plaintiffs' conclusory assertion that they "have not had the opportunity" to take discovery on the issue of the bowling balls' performance, if supported by the record, might have justified a continuance. But plaintiffs' bare assertion does not satisfy their responsibility under Rule 56(f), and the court has not found any support in the record for plaintiffs' purported lack of opportunity for discovery on this issue. Courts need not aid non-movants who have occasioned their own predicament.

Moreover, this is not a case where discovery was scheduled to remain open for much longer, and where plaintiffs had simply planned discovery on the doctrine of equivalents issues for a later time. Plaintiffs filed their response brief on October 31, 1997. Discovery was scheduled to close on November 25, 1997. Indeed, fact discovery closed on November 25. *See* Minute Order, No. 97 C 0571 (N.D.Ill. Aug. 5, 1997). On November 7, 1997, plaintiffs moved to extend the discovery deadline until February 23, 1998. Significantly, plaintiffs did not mention their need to conduct discovery on the issue of equivalence as a reason for the requested extension. The court ruled as follows:

> Plaintiffs' motion for extension of discovery cut-off date is granted. Disclosure of experts pursuant to FRCP 26(a)(2) reset to December 23, 1997. Completion of damages experts discovery extended to January 20, 1998. Joint pretrial order and agreed jury instructions submission reset to February 11, 1998 at 9:00 a.m. Plaintiffs' draft to be submitted to defendant February 4, 1998. Case is placed on the March trial calendar. Final extension.

Minute Order, No. 97 C 0571 (N.D.Ill. Nov. 13, 1997).

To be clearer, the November 13 order should have read "plaintiffs' motion for extension of discovery cut-off is granted in part." However, the court gave an extension date specifically for the close of "damages expert discovery," and the court directed that the joint pretrial order was due on February 11, 1998—before plaintiffs' requested extension. Under these circumstances, and given the specificity of this minute order and the court's previous scheduling orders in this case, plaintiffs were unreasonable if they assumed that the deadline for fact discovery had been extended.

More importantly, November 25 was the discovery deadline when plaintiffs filed their response brief to Brunswick's summary judgment motion, and plaintiffs have never offered an explanation for not conducting *any* discovery on the issue of the function and performance of the bowling balls' relevant components before that time. Nor have plaintiffs ever requested an extension to conduct discovery specifically on the issue of equivalence. Plaintiffs fail to provide any factual evidence that the annular ring in the accused bowling balls is equivalent to the second elongate section described in the '731 patent. Accordingly, summary judgment must be granted for Brunswick on this issue.

## CONCLUSION

Brunswick's motion for summary judgment is granted. Plaintiffs' cross-motion for summary judgment is denied. Judgment is entered in favor of defendant Brunswick Corporation and against plaintiffs George Zelinski, Jr. and Pinbreaker, Inc.