NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 14, 2010[*]
Decided April 14, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 09-3554

| | |
|---|---|
| NICKOLAS J. LAUMANN, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 07C1046 |
| | |
| RICHARD HEIDORN, et al., | Lynn Adelman, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Nickolas Laumann is a Wisconsin inmate who sued prison guards, medical employees, and administrators under 42 U.S.C. § 1983, claiming that they were deliberately indifferent to a serious medical condition. The district court granted the defendants' motion for summary judgment, reasoning that, even though they could not cure Laumann's condition, they did not ignore it. We affirm the judgment.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

The first sign that Laumann was ill came around 2:00 a.m. on June 25, 2006, when he vomited blood and complained of chest pain and difficulty breathing. He says that the guard on duty ignored his pleas to be taken to the infirmary. When a different guard came on shift around 6:00 a.m., Laumann renewed his pleas to be taken to the infirmary. So the guard sent him to a nurse who was dispensing medication to other prisoners, but she said she could not help. A short while later Laumann was permitted to speak by telephone to Kathy Lemens, a registered nurse. He described his symptoms, and Lemens told him she would arrive around 8:00 a.m. and attend to him then. Once she examined him, she decided to move him to the infirmary for observation. She gave him Advil and Pepto-Bismol and instructed him to stay hydrated. The next day, Laumann reported that he was no longer vomiting and asked to return to his cell.

Apparently Laumann's symptoms returned on July 5. The prison's nursing supervisor told him she would schedule an appointment with Richard Heidorn, a prison physician. Laumann was transferred back to the infirmary cell on July 13 after he began vomiting within minutes of eating any food. Dr. Heidorn examined him for the first time on July 14 and, suspecting a kidney stone, told Laumann he would follow up with him three days later. Laumann continued to vomit after every meal, and his weight dropped by nine pounds over those three days. So Dr. Heidorn sent him to the emergency room at a local hospital, where Laumann was diagnosed with a case of gastritis, an inflammation of the stomach lining. The hospital prescribed medication and recommended seeing a gastrointestinal specialist.

Laumann's symptoms persisted, so a week later Dr. Heidorn scheduled an appointment with a gastrointestinal specialist at an outside clinic. The specialist performed two tests that revealed that Laumann was suffering from achalasia, a disorder in which the lower esophageal sphincter fails to relax during swallowing. Dr. Heidorn responded by instructing Laumann to drink a nutritional energy supplement at every meal and prescribing oral nitrates; he also ordered nurses to monitor his vital signs once a week.

But Laumann continued to vomit blood and lose weight. So Dr. Heidorn ordered an upper gastrointestinal endoscopy, which was performed at an outside clinic on October 5. Laumann also underwent a balloon-dilation procedure and received a botox injection at the same clinic on October 25. After reviewing the results from each of these procedures, Dr. Heidorn prescribed the medications and diets recommended by the outside clinic. Throughout this time Laumann complained to several prison administrators about the treatment he was receiving. On December 1, 2006, he was transferred to a different prison.

Laumann's complaint names as defendants Dr. Heidorn, five nurses, the prison's medical director, and several administrators. In his complaint Laumann also mentioned as "John Doe" defendants the two guards and the nurse he first complained to on June 25, but none of these persons was served with process. The district court granted the defendants' motion for summary judgment, reasoning that Dr. Heidorn and the other medical personnel took Laumann's "condition seriously and treated him attentively." Laumann's disagreement with the course of treatment he received, the district court explained, was insufficient to make out a claim of deliberate indifference. As for the prison administrators, the district court determined that they were not deliberately indifferent when they concluded that the treatment meted out by medical personnel was adequate.

On appeal Laumann argues that the district court erred in granting summary judgment for the defendants because his condition was never cured. But Laumann presented no evidence that the response of Dr. Heidorn and the defendant nurses was such a departure from accepted professional practice that a reasonable factfinder could infer indifference. *See Duckworth v. Ahmad*, 532 F.3d 675, 682 (7th Cir. 2008); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). In fact the record shows the opposite. Once it became clear that Laumann's symptoms were serious, Dr. Heidorn sent him to outside experts who successfully diagnosed his achalasia. The disease has no known cure, *see* Mayo Clinic, Achalasia, http://www.mayoclinic.org/achalasia/ (last visited Apr. 14, 2010), but Laumann received all the recommended nonsurgical treatments, including oral nitrates, a botox injection, and a balloon dilation, *see* Mayo Clinic, Achalasia Treatment, http://www.mayoclinic.org/achalasia/treatment.html (last visited Apr. 14, 2010). So the treating doctor and nurses were far from deliberately indifferent to Laumann's condition, and it follows that the defendant administrators could not be liable for deferring to the judgment of medical personnel. *See Hayes v. Snyder*, 546 F.3d 516, 527-28 (7th Cir. 2008); *Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006); *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005).

Laumann also argues that the district court erred by granting summary judgment before he had a chance to amend his complaint to add as defendants the three "John Does." There is no evidence in the record that the unnamed guards and nurse could have done anything to assist Laumann before he was permitted to speak with Nurse Lemens. More importantly, however, Laumann never filed a motion under Federal Rule of Civil Procedure 56(f) explaining why it would be premature to rule on the defendants' motion for summary judgment. *See Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006); *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994); *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993) (requiring pro se litigant to follow Rule 56(f)). Laumann had identified all these prison employees

fairly early in the game, and though he filed a document captioned "Amended Information" that he apparently thought would amend his complaint to add additional defendants, the district court never acted on that submission. Laumann did not make another attempt; instead he continued to demand that the defendants give him photographs of each guard on duty the morning of June 25 and insisted that he could not amend his complaint until the photographs were in his possession. A pro se prisoner may be excused from his initial inability to name his adversaries, but at some point he must discover their identities and have them served. *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995). Laumann had more than ample opportunity.

AFFIRMED.