United States Court of Appeals,

Fifth Circuit.

No. 91–7303.

WICHITA FALLS OFFICE ASSOCIATES, Plaintiff–Appellant,

v.

BANC ONE CORPORATION, et al., Defendants,

Banc One Corporation and Bank One, Texas, N.A., Defendants–Appellees.

Dec. 4, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before REYNALDO G. GARZA and GARWOOD, Circuit Judges and ROSENTHAL,[*] District Judge.

REYNALDO G. GARZA, Circuit Judge:

Falls Office Associates ("WFOA") commenced suit against Banc One Corporation and Bank One, Texas, N.A. (collectively "Banc One") in order to determine their respective rights under an office building lease. The district court granted summary judgment to the defendants. Because the district court prematurely terminated discovery we REVERSE and REMAND.

I. FACTS

On November 30, 1983, WFOA, as owner/lessor entered into a complex sale-leaseback transaction with lessee MBank Wichita Falls, N.A. ("MBank"). Pursuant to the transaction, WFOA financed its acquisition of the property with a loan from MBank conveying in return a nonrecourse note. Further, WFOA granted a lien to MBank on the property and the lease payments themselves. MBank had total dominion and control of the building under the lease.[1]

In March of 1989, MBank was declared insolvent and placed into an FDIC receivership. The FDIC transferred most of MBank's assets to The Deposit Insurance Bridge Bank ("DIBB"). DIBB entered into a Purchase and Assumption Agreement ("P & A Agreement") with the FDIC and took

---

[*]District Judge of the Southern District of Texas, sitting by designation.

[1]MBank was responsible for all aspects of the building including: (i) security; (ii) access; (iii) maintenance; (iv) taxes; and (v) insurance.

over many different MBanks including MBank Wichita Falls.

In the summer of 1989, Banc One Corporation of Ohio ("Banc One") assumed management of DIBB and purchased all the DIBB stock. Banc One succeeded to DIBB's obligations under the P & A agreement with the FDIC. After Banc One purchased DIBB it changed the name to Bank One, Texas, N.A. ("Bank One").

Section 4.4(a) of the P & A agreement gave DIBB and successor bank the option to accept an assignment from the Receiver of any lease agreements. Further, Banc One had a fixed period of time in which to decide whether or not to maintain the leased premises now occupied by Bank One. Whenever, Banc One decided to abandon a lease, the FDIC sent a letter of disaffirmance with an effective termination date. Pursuant to Section 4 of the P & A Agreement, Banc One was obligated to pay rent during the transitional period of evacuation. Further, the P & A agreement provided that the full contract rent was to be paid direct ly to the "lessors of the buildings leased by the failed MBanks" during these transitional periods.

On September 12, 1989, Banc One indicated to WFOA that it intended to vacate the leased premises. On the same day, Banc One's Vice president, Thomas Rainey, wrote a letter (the "Rainey Letter"), which notified WFOA of Banc One's intent to disaffirm the lease, vacate the premises, and abide by the terms of the lease in the interim. The letter provided no exact departure date, and in fact, Bank One did not vacate the building until 15 months later. The exact rent due to WFOA from Banc One for those fifteen months is the crux of the current controversy.

Although the facts are disputed, it appears that Banc One paid only a pro-rata portion of the rent for the transitional period, based upon the amount of space it occupied in relation to the original lease. Further, it is alleged that Banc One failed to adequately comply with its duties under the lease such as paying insurance, taxes and utilities. It is also alleged that Banc One abandoned numerous maintenance contracts and business relationships that were vital to the leased premises.

## II. PROCEEDINGS

On November 14, 1989, WFOA filed its complaint in the Wichita Falls Division of the Northern District of Texas. In late January 1990, before any discovery had taken place, Banc One

filed a motion to dismiss or, alternatively, to transfer venue. The motion to dismiss was denied; however, the motion to transfer venue was granted, which transferred the case to the Dallas Division.

Banc One then filed a second motion to dismiss for failure to state a claim or, alternatively, for summary judgment. On July 31, 1990, while the district court was considering the pending motion, WFOA filed a motion for preliminary injunction prohibiting Banc One from vacating the building. WFOA also sought to obtain discovery of both Banc One and the FDIC in connection with the pending motion.

On August 22, 1990, WFOA filed a motion for consolidation of the defendant's motion and plaintiff's preliminary injunction motion. In support of the motion for consolidation, WFOA submitted two affidavits by Mr. David Pardue, and recent deposition testimony of Mr. Bobby Hathaway, Senior Vice President of Bank One.

At his deposition, Hathaway was unable to recall many aspects and events relating to documents that he had written regarding Banc One's lease obligations. In addition, Pardue's affidavits confirmed under oath the WFOA allegations.

In April of 1991, WFOA served extensive discovery requests upon the banks.[2] WFOA sought the deposition of Mr. Rainey, the author of the Rainey letter, and many other individuals said to have knowledge about the leased premises. WFOA made specific reference in their 30(b)(6) notices that they sought testimony regarding: (i) Section 4.4(d); (ii) the amount of rent due during the transition period; and (iii) whether the lease bound Banc One. Further, in document requests WFOA sought all communications regarding the disputed rent in Wichita Falls and any documents relating to Section 4.4 of the P & A Agreement.

On April 22, 1991, Banc One moved for a protective order from this barrage of discovery. On April 23, 1991, Magistrate Tolle, conducted a hearing by telephone to consider the motion. At the conclusion of the hearing the magistrate denied Banc One's motion. On May 6, 1991, The banks appealed the magistrate's determination.

---

[2]The cutoff date for discovery had been pushed back a number of times in early 1991 because of pending settlement negotiations with the FDIC. The parties were awaiting the final settlement with the FDIC because the nature of this litigation depended upon the settlement agreement.

On June 4, 1991, the district court granted the bank's motion for a protective order cutting off all discovery sought by WFOA. Subsequently, on June 6, 1991, the district court granted the bank's summary judgment motion on all of WFOA's claims. WFOA appeals.

## III. DISCUSSION

WFOA appeals the district court's order principally on three grounds: (i) discovery was improperly cut off; (ii) summary judgment on WFOA's breach of contract claim was erroneously granted; and (iii) summary judgment was improperly granted on WFOA's good faith and fair dealing claim.

### Discovery Cut Off

The trial judge's decision to curtail discovery is granted great deference and, thus, is reviewed under an abuse of discretion standard. *See Landry v. Air Line Pilots Ass'n Int'l AFL–CIO,* 901 F.2d 404, 436 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Corwin v. Marney, Orton Invs.,* 843 F.2d 194, 200 (5th Cir.), *cert. denied,* 488 U.S. 924, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988).

WFOA contends that discovery was improperly terminated because it was not given a reasonable opportunity to present all evidence relevant to the summary judgment motion. *See Fed.R.Civ.P.* 12(b)(6). The banks counter WFOA's position asserting that: (i) WFOA was dilatory because it sought no discovery for nine months after the summary judgment motion was filed; (ii) WFOA never showed how the requested discovery would support its opposition to the bank's summary judgment motion; and (iii) WFOA did not file a formal Rule 56(f) motion seeking additional time for discovery.[3]

WFOA, in response to the banks, asserts that it filed the functional equivalent of a Rule 56(f)

---

[3]Fed.R.Civ.P. 56(f) states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such other order as is just.

*Id.*

motion and that it reasonably delayed its discovery requests pending the outcome of settlement negotiations with the FDIC. Furthermore, WFOA asserts that it set forth in detail before the district court the reasons for its discovery.

The purpose of Rule 56(f) is to provide non-movants with a much needed tool to keep open the doors of discovery in order to adequately combat a summary judgment motion.[4] Although it is preferred that non-movants present an affidavit to support a continuance of discovery, there is no stringent procedure that will bar litigants access to further discovery. In order to trigger the rule non-movants need only submit an "equivalent statement preferably in writing" that conveys the need for additional discovery. *See Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986) (*citing Littlejohn v. Shell Oil Co.,* 483 F.2d 1140, 1146 (5th Cir.) (en banc), *cert. denied,* 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973)).

Three general requirements can be elicited from *International Shortstop* that the non-movant must establish for a continuance of discovery: (i) requesting extended discovery prior to the court's ruling on summary judgment; (ii) put the trial court on notice that further discovery pertaining to the summary judgment motion is being sought; and (iii) demonstrating to the trial court specifically how the requested discovery pertains to the pending motion. *International Shortstop,* 939 F.2d at 1268. Additionally, the non-movant must diligently pursue relevant discovery—the trial court need not aid non-movants who have occasioned their own predicament through sloth. *See id.* at 1267.

The banks argue that WFOA was dilatory because they waited nearly a year to request discovery that they themselves admit is crucial to their claim. Further, the banks point out that they filed the same motion in the Wichita Falls Division fifteen months before summary judgment was ultimately granted. Consequently, they argue that WFOA was on notice for well over a year as to what issues they needed discovery on. We find that WFOA was not dilatory because they reasonably awaited the outcome of pending negotiations with the FDIC.

---

[4]Such "continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course" unless "the non-moving party has not diligently pursued discovery of the evidence." *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1267 (5th Cir.1991) (citations omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

The banks next contend that WFOA's failure to file a formal Rule 56(f) motion precludes the trial court from granting a continuance. The banks rely on *Robbins v. Amoco Prod. Co.,* 952 F.2d 901, 907 (5th Cir.1992). *Robbins* does appear to say that affidavits must be filed in order to preserve the right to a continuance. However, *Robbins* did conclude that the non-movant made only vague assertions that additional discovery was needed. *See id.* Therefore, the non-movant in *Robbins* ran afoul of the third prong in *International Shortstop.* Consequently, it is easy to reconcile *Robbins* with *International Shortstop.*

WFOA argues that its joint requests for extended discovery deadlines constituted a Rule 56(f) motion. These two requests, which were granted, certainly establish the first prong of *International Shortstop;* however, they do not put the court on notice or explain specifically how the discovery is relevant.

WFOA did specify its intended subject matter in its request for supplemental depositions and in document requests that it sought information regarding: (i) Section 4.4(d) of the P & A Agreement; and (ii) the amount of rent due to WFOA. Unquestionably, these requests related directly to the pending summary judgment motion. Significantly, Magistrate Tolle, denied the defendant's motion for a protective order concluding that WFOA was entitled to the requested discovery.[5]

It is clear that the non-moving party may not rely merely on vague assertions that discovery will produce some unrelated, unspecified facts. *See, e.g., SEC v. Spence & Greene Chem. Co.,* 612 F.2d 896, 900 (5th Cir.1980), *cert. denied,* 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981). However, when a party is seeking discovery that is germane to the pending summary judgment motion it is inequitable to pull out the rug from under them by denying such discovery.

The amalgam of WFOA's actions did put the trial court on notice that it sought discovery regarding the Rainey letter, the bank's calculation of rent, interpretive documents relating to Section

---

[5]This fact has been considered relevant in finding an abuse of discretion for failing to extend discovery under Rule 56(f): "[t]hat the contemplated discovery was material to the summary judgment motion is confirmed by the magistrate judge's ruling in favor of [the non-movant] on the discovery matters." *International Shortstop,* 939 F.2d at 1268.

4.4(d), and the bank's policy on disaffirmance.[6]

These issues were germane to the pending summary judgment motion and therefore the stay was improvidently granted. While we are generally reluctant to substitute our judgment for that of the district court, we think it wiser for the district court to defer its summary judgment determination until after WFOA has had a chance to obtain its requested discovery.

## IV. CONCLUSION

Because we find that the district court improperly curtailed discovery we do not address the summary judgment contentions. We REVERSE and REMAND.

---

[6]We emphasize that the general rule requires substantial compliance with Rule 56(f), *See Robbins,* 901 F.2d at 907 and cases cited, and that *International Shortstop* presents a very narrow exception to that rule. It is the unique facts of this case, taken as a whole, that bring it within that narrow exception. Further, we strongly urge future litigants to file a formal Rule 56(f) motion in the district court when they seek additional discovery while a summary judgment motion is pending.