**Debra GONZALEZ, Plaintiff,**

v.

**Pete GEREN, acting Secretary of the Army, Defendant.**

**Civil Case No. EP–07–CA–0242–KC.**

United States District Court, W.D. Texas, El Paso Division.

Feb. 19, 2008.

Francisco X. Dominguez, Dominguez & Coyle, P.L.L.C., El Paso, TX, for Plaintiff.

Katherine A. Lehmann, U.S. Attorney's Office, El Paso, TX, for Defendant.

### ORDER

KATHLEEN CARDONE, District Judge.

On this day, the Court considered Defendant's Motion to Dismiss and Motion for Summary Judgment ("Defendant's Motion"), Plaintiff's Response to Defendant's Motion to Dismiss and Motion for Summary Judgment ("Plaintiff's Response"), and Defendant's Reply to Plaintiff's Re-

sponse to Defendant's Motion to Dismiss and Motion for Summary Judgment ("Plaintiff's Reply"). For the reasons set forth below, it is hereby **ORDERED** that Defendant's Motion be **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

### A. Introduction

Plaintiff brings her claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, § 42 U.S.C. 2000e, *et seq.*, ("Title VII") and pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"). Pl.'s Am. Compl. ¶ 1. Accordingly, Plaintiff has invoked this Court's federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. *Id.* Venue is proper in this Court because all employment practices that Plaintiff has alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Western District of Texas, El Paso Division. *See* 29 U.S.C. § 1391; Pl.'s Am. Compl. ¶ 2.

### B. Statement of Facts

The following facts are not in dispute.[1] Plaintiff Debra Gonzalez is a female Hispanic/Mexican American who is over 40 years old. Def.'s Undisputed Facts ¶ 1. At all times relevant to this lawsuit (and up

until she was dismissed from her duties and later terminated), Plaintiff was employed with the United States Army as Supervisory Medical Technologist, GS–0644–11, in the CORE Laboratory, Department of Pathology, William Beaumont Medical Center ("WBAMC"), Fort Bliss, Texas. *Id.* ¶ 2.

While working at WBAMC, Plaintiff supervised a team of civilian medical technicians, and assisted with providing on-the-job training to junior enlisted soldiers assigned to the CORE Laboratory. *Id.* ¶ 4.[2] Plaintiff's major duties included planning work schedules to ensure an even distribution of work, performing personnel administration and management tasks, and performing routine and specialized tests and studies on blood and bone marrow. *Id.*

At all times relevant to this lawsuit, Plaintiff's first-line supervisors were Captain Michael Vanzile, and then Capt. Juan Santana, Chief of the CORE Laboratory. *Id.* ¶ 3. Plaintiff's second-line supervisor was Lieutenant Colonel Richard Walker, Laboratory Manager. *Id.* Plaintiff's third-line supervisor was Lt. Col. John Matlock, Chief of Pathology. *Id.*

### 1. The glass door incidents

On September 24, 2004, Capt. Vanzile sent an email to five supervisors, including Plaintiff, stating, in relevant part that:

---

[1]. For purposes of this Summary Judgment Motion, Plaintiff has admitted to the facts the Defendant has alleged in its Undisputed Facts that are included in this Order. *See generally* Def.'s Mot. App. 1–14; Pl.'s Resp. 5–13. The Court will indicate any use of Defendant's Undisputed Facts that Plaintiff disputes with additional text or a footnote. Moreover, the Court will look to the evidence submitted by the parties for additional facts undisputed by the parties.

The Court adds that it does not appreciate the slipshod and potentially misleading manner in which Defendant has provided its evidence. Deficiencies include,

but are not limited to, failing to provide an exhibit list until the Court requested one, mislabeling exhibits in this list by attributing testimony to the wrong parties, and failing to provide at least one exhibit until after both parties filed their motions. The Court warns parties that similar behavior in the future will result in sanctions.

[2]. Plaintiff disputes the number of technologists she supervised and asserts that she also supervised the training and technical work for non-commissioned officers in the lab. Pl.'s Resp. 5 ¶ 4. This distinction is ultimately irrelevant for purposes of this Order.

In order to make the laboratory aesthetics consistent within the main lab and to aid with the problems with the door closure devices (ex. no holding the door open, devices ripping from the door frame) all doors in the clinical laboratory are being replaced with glass containing doors like those on the central lab offices. We will get blinds for all who request them. All doors but one will be changed today due to misordering of one door setup.

Def.'s Ex. 4.

Upon installation of her new office door, on September 24, 2004, Plaintiff immediately covered the glass window in the new door with paper.[3] Def.'s Undisputed Facts ¶ 6. That day, both Capt. Vanzile and Lt. Col. Walker instructed Plaintiff to remove the paper from the glass window.[4] *Id.* Instead of removing it, Plaintiff initially folded the paper up halfway. *Id.* Plaintiff later fully complied and removed the paper. *Id.* Then, on October 18, 2004, Plaintiff again placed paper on her door window.[5] Lt. Col. Walker came to Plaintiff's office, and instructed her once again to remove the paper. Def.'s Undisputed Facts ¶ 7.

On October 19, 2004, Capt. Vanzile issued a Memorandum to Plaintiff regarding the paper on her office door on September 24 and October 18, 2004 ("October 19, 2004 Memorandum"). *Id.* ¶ 8. The Memorandum outlined the incidents and characterized Plaintiff's actions in relation to the incidents as:

> a clear act of insubordination and it will not be accepted. My directions remain in effect until I say otherwise, not when you decide that they are necessary to follow. Your continued defiance of my and LTC Walker's authority is completely unacceptable and will be dealt with in an appropriate manner.

Def.'s Ex. 5 ¶ 6.

### 2. December 15, 2004 memorandum

On December 15, 2004, Capt. Vanzile sent another Memorandum to Plaintiff ("December 15, 2004 Memorandum"). Def.'s Ex. 6. In this Memorandum, Capt. Vanzile counseled Plaintiff for allegedly making rude and derogatory remarks to military personnel in the laboratory. *Id.* In addition, Capt. Vanzile stated he had received complaints "concerning rude conversations with the military staff and refusal to listen to their responses to your concerns." *Id.* ¶ 3. The Memorandum also stated that Plaintiff questioned mandatory military training. *Id.* ¶ 4. The Memorandum stated that Plaintiff's actions were construed by her supervisors as demoralizing and abusive towards the military members working in her section, as well as creating a rift between the civilian personnel and military personnel. *Id.* ¶¶ 2, 5.

---

**3.** Plaintiff states that the decision to replace the doors had been made two weeks prior without notifying her, and her notification on the same day as their replacement demonstrated her chain of command's "lack of trust and respect to me as a supervisor." Def.'s Ex. 5, at 2 ¶ 2 (Pl.'s Resp. to Memorandum). In response to this perceived slight, Plaintiff states that she placed the paper on her door "to see if my suspicion was correct. It immediately caused my Chain of Cmd [sic] to respond." *Id.*

**4.** Defendant asserts and Plaintiff denies that Lt. Col. Walker instructed Plaintiff twice to remove the paper from the glass window. *See* Def.'s Undisputed Facts ¶ 6; Pl.'s Resp. 6 ¶ 6. Once again, it is irrelevant for purposes of this Order whether it was once or twice. It is undisputed that Lt. Col. Walker instructed Plaintiff to remove the paper and Plaintiff failed to immediately comply.

**5.** Plaintiff states that she placed paper on her door because she was experiencing a "personal crisis," was crying uncontrollably, and placed the paper over her window for privacy. Pl.'s Resp. App. 5 ¶ 23 Sworn Declaration of Debra C. Gonzalez Pursuant to 28 U.S.C. § 1746 ("Gonzalez Declaration").

### 3. January 10, 2005 meeting

On January 10, 2005, Lt. Col. Walker held a supervisors' meeting that Plaintiff attended. Def.'s Undisputed Facts ¶ 10. At that meeting, Lt. Col. Walker outlined a process for notifying the supply department of when laboratory sections placed direct orders to a vendor. *Id.* In response to a question as to whether anyone had any concerns, Plaintiff raised her hand and indicated that she was having a problem getting supplies. Gonzalez Decl. ¶ 24. Lt. Col. Walker then allegedly blamed Plaintiff for the problem and discussed the issue with Plaintiff for several minutes. *Id.* At the end, Lt. Col. Walker told Plaintiff to use email to facilitate obtaining supplies, to which Plaintiff responded, "Let's see it if works." *Id.*

After the meeting, Lt. Col. Walker sought out Plaintiff and ordered her to his office. *Id.* ¶ 25. During the meeting, both parties allege the other side acted in a harsh, aggressive, and disrespectful manner, while also claiming to have individually acted in a calm, professional and courteous manner. *Compare id.* ¶¶ 25–26; Def.'s Ex. 7. Undisputed however is that Lt. Col. Walker instructed Plaintiff twice to stay or return to his office, as Plaintiff attempted to leave before the conversation ended. Def.'s Ex. 7. In addition, Plaintiff refused to allow the door to be shut to Lt. Col. Walker's office, stating later that "I was afraid of him and that I wanted to leave." Gonzalez Decl. ¶ 26.

### 4. Laboratory inspection

On March 15, 2005, the CORE Laboratory was scheduled for a routine inspection by the College of American Pathologists ("CAP"). The day before, Lt. Col. Walker and several other military personnel went into the lab for a pre-inspection. Def.'s Ex. 8. During the pre-inspection, Plaintiff alleges that Lt. Col. Walker accused Plaintiff's section of not being in compliance with CAP regulation. *Id.* On the actual day of the inspection, Plaintiff alleges that Lt. Col. Walker pointed out deficiencies in her section in front of the CAP inspectors. Def.'s Ex. 10. Plaintiff alleges that Lt. Col. Walker pointed out the alleged deficiency "for the sole purpose to try and get me to have a deficiency and not appear competent." *Id.* Ultimately, the CAP inspectors cited the laboratory with only two "general" deficiencies: the training of all personnel in the packaging and shipping of infectious material, and the type of capillary tubes in use at the lab. Def.'s Ex. 11.

Subsequent to the CAP inspection, on March 16, 2005, Lt. Col. Walker met with Plaintiff and two other supervisors to discuss the inspection. Def.'s Undisputed Facts ¶ 14. During this meeting, Defendant alleges that Plaintiff became very disrespectful, telling Lt. Col. Walker not to "look at me that way and do not try to stare me down. Do you understand." Def.'s Ex. 7 at 2. In addition, when Lt. Col. Walker attempted to close the door to the room they were having their meeting, Plaintiff allegedly pushed the door back open, and yelled "I want this door opened!" *Id.* Plaintiff, however, denies these allegations and adds that "the meeting was used as an excuse to reprimand me." Gonzalez Decl. ¶ 28. Captain Vanzile later included this incident in his Letter of Reprimand to the Plaintiff "as yet another example of inappropriate behavior" by Plaintiff. *Id.*

### 5. Letter of reprimand

On April 29, 2005, Capt. Vanzile issued Plaintiff a Letter of Reprimand ("Letter"). Def.'s Ex. 7. First, the Letter charged Plaintiff with Discourtesy to a supervisor for her actions during her January 10, 2005, meeting with Lt. Col. Walker. *Id.* at 1. Second, the Letter charged Plaintiff with disrespectful and inappropriate be-

havior toward a supervisor and peers for her actions during her meeting with Lt. Col. Walker on March 16, 2005. *Id.* at 2. Finally, the Letter charged Plaintiff with interference with mandatory soldier training for an alleged incident on March 23, 2005. *Id.* The Letter concluded that Plaintiff was "consistently uncooperative and unsupportive not only to the military staff but to other members of the staff as well. Your conduct adversely impacts the efficiency of the Hematology section, and negatively affects the overall morale and discipline of the Department." *Id.* at 3.

Plaintiff later filed a grievance concerning the Letter of Reprimand. Def.'s Ex. 14. In her grievance, Plaintiff denied all the charges in the Letter and sought the removal of the Letter from her personnel file. *Id.* at 5. Lieutenant Colonel Mary E. Garr, Chief of Staff, WBAMC, was responsible for deciding the administrative grievance. Def.'s Undisputed Facts ¶ 20. After meeting twice with Plaintiff and other witnesses to the alleged incidents,[6] Lt. Col. Garr sustained the Letter of Reprimand, as written. *Id.*

### 6. Non-selection for GS–12 position

In June 2005, Plaintiff applied for a newly created position of Supervisory Medical Technologist, GS–0644–12. Gonzalez Decl. ¶ 34. The person holding the position would be a supervisor in a complex clinical laboratory and would have duties including coordinating the operations of twenty-two employees, as well as establishing testing standards and devel-

oping analytical testing methods for the CORE laboratory in various areas. Def.'s Undisputed Facts ¶ 22. Initially, Plaintiff was selected as one of the top three candidates for the position, but ultimately no one was selected from the initial list.[7] *See* Pl.'s Ex. 15.

Between August 8, 2005 and August 22, 2005, the Army again advertised for the new GS–12 position and Plaintiff applied. Def's Undisputed Facts ¶¶ 21, 23. Her resume was referred to the selecting official for consideration along with five other candidates. *Id.* ¶ 23.

Lt. Col. Walker selected Capt. Juan Santana, the current Chief of the CORE Laboratory to be the head of the selection panel that would choose who would fill the GS–12 position.[8] *Id.* ¶ 24. Captain Santana, a 38–year–old Hispanic male from Puerto Rico, then chose the following people for the panel: Capt. Tony Pierson, a 40–year–old Caucasian male and the Chief of the laboratory's Microbiology and Immunology sections; Yolanda Thome, a 58–year–old Hispanic, Mexican–American female and Supervisor of the laboratory's Immunology section; Peggy Gale, a 47–year–old Caucasian female and a Supervisory Laboratory Technician; and Commander Richard Mondragon a male whose race and national origin were not provided. *Id.* ¶ 26. Capt. Santana later testified that he selected the panel members in part based on their different races and nationalities in order for the panel "to have ... validity." *See* Def.'s Ex. 22.

---

**6.** Lieutenant Colonel Garr states in her Grievance Decision that she met with witnesses to the alleged incidents. Def.'s Ex. 15. Plaintiff, however, denies Lt. Col. Garr met with Plaintiff's witnesses to the alleged incidents but does not deny that Lt. Col. Garr met with other witnesses. *See* Pl.'s Resp. at 8 ¶ 20.

**7.** It is unclear from the record why no one was picked from the initial list. Defendant

provides no answer and Plaintiff claims that "Lt. Col. Walker chose not to select from the list and gave conflicting reasons for doing so." Gonzalez Decl. ¶ 34.

**8.** Plaintiff disputes that Lt. Col. Walker truly removed himself from the decision-making. See Pl.'s Resp. 9 ¶ 25.

Ultimately, the panel interviewed three candidates by telephone on September 23, 2005. Def.'s Undisputed Facts ¶ 28. The candidates did not include Plaintiff. *See Id.* On February 3, 2006, Capt. Santana sent a memorandum to Lt. Col. Walker informing him that the selection committee had selected one of the three chosen candidates—Mitesh Patel—for the GS–12 Supervisory Medical Technologist position. *Id.* ¶ 34. After receiving notice of the panel's selection, Lt. Col. Walker finalized Mr. Patel's selection through an Army computer program that facilitates hiring new employees. *Id.* ¶ 35.

### 7. Senior system civilian evaluation report

On January 5, 2006, Capt. Santana and Lt. Col. Walker signed Plaintiff's last Senior System Civilian Evaluation Report, an annual assessment of Plaintiff's performance. Pl.'s Ex. 8. The Report covered Plaintiff's job performance from November 1, 2004 through October 31, 2005. *Id.* at 1. Captain Santana signed the Report as Plaintiff's Rater, and Lt. Col. Walker signed the Report as Plaintiff's Senior Rater. *Id.*

In its "Values" section, the Report described Plaintiff as one who "[c]an be counted on most of the time to complete assignments," "[s]eeks better ways to ensure quality results for patients," "[w]illing to work extra hours to cover shifts," and "[b]ecomes defensive when questioned by some staff." *Id.* at 1. In the Rater's overall "Performance Evaluation," Plaintiff was described as "Success All or Excellence 1–24 % Obj." *Id.* at 2. This rating was the middle of five possible ratings. *Id.*

In Part IX, the section labeled "Senior Rater," the Report described Plaintiff as "[w]ell organized in technical work requirements," "[u]nderstands most responsibilities," "[n]eeds to improve relationships with many of the civilian and military

staff," "[l]oyalty to organization should be improved," and "[t]eam member concept needs improvement." *Id.* In Part VIII, the Senior Rater's Overall Performance Rating listed Plaintiff at 3 out of 5. *Id.*

### 8. Plaintiff's Termination

On November 4, 2005, Plaintiff received a memorandum from Capt. Santana stripping her of supervisory responsibilities and detailing her to the Hematology Section. Pl.'s Ex. 10. The memorandum also informed Plaintiff that Mr. Patel was to move into her office and assume the duties of the Core Lab Supervisor. *Id.*

On February 10, 2006, Plaintiff received a letter indicating that she would be removed from federal service. Pl.'s Ex. 11. The letter indicated that Plaintiff was being removed for misusing and abusing government property, making false statements to her supervisor, failure to observe administrative rules, unauthorized possession of government property, and two instances of insubordination. *Id.* The letter stated that all of these alleged acts took place in November 2005, after she had received notice that she would be removed from her position as supervisor. *Id.*

### C. Procedural History

### 1. Plaintiff's first EEO complaint

On March 16, 2005, Plaintiff made initial contact with the local Equal Employment Opportunity office at Fort Bliss, asserting that she was subjected to a hostile work environment based on her race and gender. Def.'s Undisputed Facts ¶ 15. On May 3, 2005, Plaintiff amended her first EEO complaint to allege that the April 29, 2005, Letter of Reprimand she received was issued in reprisal for prior protected activity. *Id.* ¶ 18.

On September 13–15, 2005, the Department of Defense, Office of Complaint Investigations (DOD–OCI) held a detailed

Fact–Finding Conference to investigate Plaintiff's EEO complaint. *Id.* ¶ 38. Plaintiff, Lt. Col. Matlock, Lt. Col. Walker, Capt. Vanzile, and ten other witnesses testified during the Fact–Finding Conference. *Id.* None of the witnesses who testified at the Fact–Finding Conference, to include Plaintiff, claimed to have ever heard Lt. Col. Walker make a racist or sexist statement, or a statement indicating a desire or intent to retaliate against Plaintiff. Def.'s Undisputed Facts ¶ 47.[9]

On May 9, 2007, the Army issued its final decision on Plaintiff's first complaint. *Id.* ¶ 51; Def.'s Ex. 46. The Administrative Law Judge ("ALJ") found no discrimination. Def.'s Ex. 46.

### 2. Plaintiff's second EEO complaint

On February 16, 2006, Plaintiff filed a second EEO complaint, alleging she had been passed over for the GS–12 Supervisory Medical Technologist Position because of her race, national origin, age, gender, and in reprisal for prior protected activity. Def.'s Ex. 33.

On June 7, 2006, the DOD–OCI held a second detailed Fact–Finding Conference, with a different investigator, to investigate Plaintiff's second EEO complaint. Def's Undisputed Facts ¶ 48. Plaintiff, Lt. Col. Matlock, and Lt. Col. Walker again testified. *Id.* ¶ 48

Four of the five members of the selection panel for the GS–12 position for which Plaintiff applied also testified: Juan Santana, Tony Pierson, Margaret Gale, and Yo-

landa Thome. *Id.* ¶ 49; *see also* Def.'s Ex. 43.[10] All four members of the panel who testified stated that during the selection process, the applicant's ages, genders, national origins, or races were never discussed, nor was Plaintiff's prior EEO activity. *See generally* Def.'s Ex. 43. Each member of the panel who testified also stated specifically that Lt. Col. Walker played no part in the decision-making process of selecting the candidate for the GS–12 position. *See* Def.'s Ex. 42, at 163 ("Testimony of Tony Pierson"), 188 ("Testimony of Yolanda Thome"); Ex. 43, at 49 ("Testimony of Juan Santana"), 177–78 ("Testimony of Margaret Gale").

On May 15, 2007, the Army issued its final decision on Plaintiff's second complaint. Def.'s Undisputed Facts ¶ 52. The ALJ found no discrimination. *See* Def's Ex. 47.

### 3. Plaintiff's third EEO complaint

On June 7, 2006, Plaintiff filed her third EEO complaint, alleging discrimination based on race, gender, and national origin. *See* Pl.'s Ex. 4.[11] Specifically, Plaintiff alleged that she was unlawfully terminated from her position as reprisal for prior EEO activity. *See generally* Pl.'s Ex. 4.

Plaintiff had initially requested a hearing before the ALJ on all three EEO complaints, but on February 27, 2007, she withdrew her hearing requests and requested a final decision by the Army on each of her complaints. Def.'s Undisputed

---

**9.** Plaintiff states that "[w]ithout the benefit of discovery, Plaintiff cannot admit or deny the factual allegations contained in witness testimony." Pl.'s Resp. at 11 ¶ 47. However, Plaintiff herself testified at this Fact–Finding Conference and can admit or deny whether her testimony comported with the allegation above. Moreover, this alleged Undisputed Fact presented by Defendant only alleges that these parties testified as indicated above. Plaintiff—as a first-hand witness who cross-examined these witnesses personally and through counsel—can admit or deny that they so testified, as she did with numerous other allegations by the Defendant.

**10.** Plaintiff admits that the witnesses identified testified, but states that without the benefit of discovery cannot admit or deny the factual allegations contained therein. Pl.'s Resp. 11 ¶ 49.

**11.** Plaintiff filed an amended complaint two days later. *See* Pl.'s Ex. 4, at 8.

Facts ¶ 51. On July 31, 2007, the Army issued its final decision on Plaintiff's third complaint, dismissing the complaint in accordance with 29 C.F.R. § 1614.107(a)(3) because Plaintiff had filed the instant complaint in this Court. *Id.* ¶ 52.[12]

#### 4. The instant action

On July 9, 2007, Plaintiff filed the instant Complaint in this Court. *See* Pl.'s Compl. In her Amended Complaint, filed September 7, 2007, Plaintiff claims that Defendant engaged in unlawful employment practices in violation of Title VII and the ADEA. Pl.'s Am. Compl. ¶ 45. Specifically, Plaintiff claims the practices included "being subject to a hostile work environment; being constantly threatened, belittled and humiliated; receiving a lower and unwarranted rating in her evaluation; being stripped of her duties and responsibilities; being demoted; being denied a promotion; being subjected to different terms and conditions of employment; being subjected to heightened scrutiny; and ultimately being terminated after 26 years of dedicated, loyal and exceptional service." *Id.*

On October 31, 2007, Defendant filed its Motion to Dismiss and Motion for Summary Judgment. Plaintiff filed a Response December 15, 2007, and Defendant filed its Reply January 14, 2008.

## II. DISCUSSION

### A. Standard

Federal courts are courts of limited jurisdiction. *Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the United States,* 362 F.3d 333, 336 (5th Cir. 2004). Without jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *Id.* A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). FED.R.CIV.P. 12(b)(1).

A motion to dismiss pursuant to Rule 12(b)(1) must be considered before any other challenge, because a court must have jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir.1994). In ruling upon such motion, a district court is free to weigh the evidence and satisfy itself as to its power over the case. *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.,* 957 F.2d 178, 181 (5th Cir.1992). In making this ruling, the district court may rely upon: (1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by undisputed facts in addition to the court's resolution of disputed facts. *Barrera–Montenegro v. United States and Drug Enforcement Admin.,* 74 F.3d 657, 659 (5th Cir.1996).

The standard of reviewing a motion to dismiss pursuant to 12(b)(1) depends upon whether the defendant makes a facial or factual challenge to the plaintiff's complaint. *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir.1981). When the defendant makes a facial attack by the mere filing of a Rule 12(b)(1) motion, the trial court looks to the sufficiency of the plaintiff's allegations, which are presumed to be true. *Id.* When the defendant makes a factual attack by providing affidavits, testimony, and other evidence challenging the court's jurisdiction, the plaintiff must sub-

---

12. This regulation states:
 Prior to a request for a hearing in a case, the agency shall dismiss an entire complaint: (3) That is the basis of a pending civil action in a United States District court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint; or that was the basis of a civil action decided by a United States District Court in which the complainant was a party[.]
 29 C.F.R. § 1614.107(a)(3).

mit facts in support of the court's jurisdiction and thereafter bear the burden of proving that the trial court has subject matter jurisdiction. *Middle S. Energy, Inc. v. City of New Orleans,* 800 F.2d 488, 490 (5th Cir.1986).

In addition, summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir.2006). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Ellison,* 85 F.3d at 189.

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1046–1047 (5th Cir.1996). If the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield,* 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Crim. Justice,* 369 F.3d 854, 860 (5th Cir.2004)). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

## B. Exhaustion of Administrative Remedies

Defendant first argues summary judgment should be granted with regard to several of her claims because Plaintiff failed to exhaust her administrative remedies. *See* Def.'s Mot. 6–7. Specifically, Defendant argues that because Plaintiff never filed an administrative claim concerning her allegedly unwarranted rating in her evaluation, and because she did not allege any national origin or ADEA claims during her first EEO Fact–Finding Conference, these claims should be dismissed for lack of subject-matter jurisdiction. *Id.* Plaintiff argues, however, that she is not asserting a claim on the basis of her unwarranted poor evaluation that is separate from her hostile work environment claim. Pl.'s Resp. 4. Moreover, Plaintiff argues that she is entitled to pursue a hostile work environment claim based on her age and national origin because the Court should read both her first and second claims together. *Id.* at 4–5.

### 1. Plaintiff's allegation of an unwarranted poor evaluation

In her Complaint, Plaintiff states that her hostile work environment included "receiving a lower and unwarranted rating in her evaluation." Pl.'s Compl. ¶ 45. De-

fendant claims this allegation is barred because Plaintiff failed to include this in her original EEO complaint, nor was it investigated during the EEOC investigation. Def.'s Mot. 6–7.

Courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies. *Nat'l Ass'n of Gov't Employees v. City Public Serv. Bd.*, 40 F.3d 698, 711 (5th Cir.1994). One of the central purposes of the employment discrimination charge is to put employers on notice of "the existence and nature of the charges against them." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 879 (5th Cir.2003). To notify employers adequately of the charges against them, employees must inform their employers from the outset about their claims of discrimination. *Id.*

The Fifth Circuit has held that "the crucial element of a charge of discrimination is the factual statement contained therein." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir.1970). The allegations in a judicial complaint filed pursuant to Title VII "may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission." *Id.* at 466 (citations omitted). While "the specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow[,]" "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 465–66.

In Plaintiff's first EEO complaint, amended May 3, 2005, Plaintiff alleges seven factual bases for her claim of a hostile work environment based on race and age. *See* Pl.'s Ex. 2. In basis six of her complaint, Plaintiff alleges fifteen additional incidents or behaviors that constitute her claim. *Id.* at 5. None of these bases, incidents or behaviors refer to an allegedly unwarranted poor rating in her last evaluation.

Moreover:

To compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of discrimination which [she] may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected.

*Gamble v. Birmingham Southern Ry. Co.*, 514 F.2d 678, 689 (5th Cir.1975) (citations omitted); *see also Fellows v. Univ. Restaurants, Inc.*, 701 F.2d 447, 450–51 (5th Cir.1983).[13]

In *Gamble*, the Fifth Circuit found that an allegation in a judicial complaint that exceeded both the EEO charge and EEOC investigation was not barred when the additional allegation in the judicial complaint (1) was "like or related to" an allegation in the EEOC charge, (2) was the same type and character as that originally charged, (3) the same plaintiffs were involved, (4) and the allegation was implicitly included in the articulated charge. *Gamble*, 514 F.2d at 688–89.

13. *But see Clayton v. Rumsfeld,* 106 Fed.Appx. 268, 271 (5th Cir.2004) (unpub. op.) (holding that additional charges were barred in an employment discrimination case when the additional charges "did not reflect the essence of the other charges."); *Hornsby v. Conoco,* Inc., 777 F.2d 243, 247 (5th Cir.1985) (an amendment to an EEO complaint outside the statutory window that adds a new charge and additional facts supporting the charge is more than a "technical defect" and thus barred by the statute of limitations).

 In the instant case, the additional allegation that Plaintiff articulates in her judicial Complaint—an allegedly unwarranted poor evaluation—is sufficiently "like or related to" the other seven bases and fifteen articulated instances or behaviors outlined in her original EEO complaint to be within the "scope" of Plaintiff's original EEO complaint. While Plaintiff's additional allegation is not implicit in her other charges, it does represent the same type of behavior as that originally charged. For example, an allegedly unwarranted poor evaluation is similar to Plaintiff's allegation that Lt. Col. Walker pointed out non-existent deficiencies in Plaintiff's work. *See* Pl.'s Ex. 2, at 4–5. The allegation is also similar in nature to the Letter of Reprimand that Plaintiff received. *See Id.* at 9. Finally, several of the same parties are involved in her 2005 evaluation as are involved in her other charges, most notably Lt. Col. Walker, who was Plaintiff's Senior Rater in her evaluation and the alleged source of hostility in Plaintiff's hostile work environment claim. *See* Pl.'s Ex. 8 at 1. Admittedly, Plaintiff's evaluation was filed after she filed her original complaint and after the Fact–Finding conference investigating Plaintiff's allegation. *See* Pl.'s Ex. 8. However, a hostile work environment does not suddenly cease at the time a party files an EEO complaint, but may consist of multiple acts over time.

*See E.E.O.C. v. WC & M Enters., Inc.,* 496 F.3d 393, 398 (5th Cir.2007).[14] A plaintiff cannot then be expected to file multiple hostile-work-environment complaints for the same continuing pattern of behavior, simply because it may extend after the date of her complaint.[15] Moreover, the evaluation covers Plaintiff's job performance from November 1, 2004 to October 31, 2005, the very period in which Plaintiff claims a hostile work environment existed. *See id.* at 1.

Accordingly, this Court holds that Plaintiff's additional allegation of an unwarranted poor evaluation is similar enough in type and nature to her other allegations to be within the scope of her original EEO complaint. Therefore, the Court has subject-matter jurisdiction to consider Plaintiff's allegation of an unwarranted poor evaluation as evidence of a hostile work environment.[16]

### 2. ADEA claims of a hostile work environment

 With regard to Plaintiff's ADEA claim of a hostile work environment, the Court holds that Plaintiff is not barred from now bringing this claim.

 Unlike claims for discrimination under Title VII, a plaintiff is under no obligation to seek an administrative remedy for ADEA claims. *See Stevens v. Dep't of Treasury,* 500 U.S. 1, 12, 111 S.Ct. 1562,

14. *WC & M Enters., Inc.* states:
 Because a hostile work environment generally consists of multiple acts over a period of time, the requisite EEOC charge must be [timely] filed.... If that requirement is met, the court may consider all of the acts alleged to have contributed to the hostile work environment, even though some of them may have taken place outside the 300–day filing period.
 *Id.* (citations omitted).

15. Indeed, in the instant case, Plaintiff did file subsequent complaints, alleging the same parties continued to engage in unlawful discriminatory behavior. *See* Pl.'s Exs. 3–4. The Court will not therefore prejudice Plaintiff for not having reiterated her hostile work environment complaint in these subsequent filings.

16. The Court makes no ruling at this time as to whether an allegedly unwarranted poor evaluation is probative or relevant to a hostile work environment, only that such an allegation has been properly brought before the Court.

114 L.Ed.2d 1 (1991) (Stevens, J., concurring and dissenting) (the ADEA "contains no express requirement that a federal employee complainant seek administrative relief."). The only requirement explicit in Fifth Circuit case law with regard to administrative remedies of ADEA claims is that once Plaintiff has "chosen to pursue an administrative remedy for his ADEA claim," she is "required to 'see it through to the end.'" *Herod v. Potter*, No. 07-60231, 55 Fed.Appx. 894, 896, 2007 WL 4180546, at *2 (5th Cir. Nov. 27, 2007) (slip op.) (citing *Tolbert v. United States*, 916 F.2d 245, 249 (5th Cir.1990)).

In the instant case, Plaintiff did not allege and later abandon the allegation that her hostile work environment claim was based on age discrimination. She is not, therefore, barred from raising it now. Moreover, even if Plaintiff had raised age discrimination in her original EEO complaint, all administrative remedies were exhausted with the ALJ's final decision. *See* 5 C.F.R. § 1201.113(e). Either way, the road is clear for Plaintiff to raise ADEA claims.

### 3. Claims of a hostile work environment based on national origin

■ Finally, the Court holds that Plaintiff is barred from bringing hostile work environment claims with regard to her national origin. This is true, not because she failed to check the right box on her original EEO complaint, but because she unequivocally abandoned any claim to discrimination based on national origin during the September 13–15 Fact–Finding Conference. During the Fact–Finding Conference, the following colloquy took place:

THE INVESTIGATOR: ... You're not claiming national origin; is that correct? You're claiming race, sex and reprisal?
MS. GONZALEZ: Maybe I need clarification. What is national origin, as opposed to race?

THE INVESTIGATOR: The country in which you identify yourself, United States or—
MS. GONZALEZ: Oh, no, I'm not claiming national origin.
THE INVESTIGATOR: I just want to make that perfectly clear.

Def.'s Ex. 35, at 124.

Subsequently, Plaintiff's claim of hostile work environment based on her natural origin does not appear to have been raised again, and the ALJ's final decision addressed only race and gender as bases for Plaintiff's claim. *See* Def.'s Ex. 46, at 1. Having abandoned her claim of a hostile work environment based on national origin at the administrative level, Plaintiff cannot now re-raise this issue at the judicial level. *See Nat'l Ass'n of Gov't Employees*, 40 F.3d at 711.

### C. Sufficiency of the Evidence to Proceed With Summary Judgment

■ Plaintiff argues that summary judgment is inappropriate at this time because Defendant filed its motion before Plaintiff had an opportunity to conduct any discovery pursuant to the Federal Rules of Civil Procedure. Pl.'s Resp. 1. While Plaintiff concedes that she has attended two fact-finding conferences at the administrative level for her claims, she argues that such conferences do not constitute meaningful discovery because she did not control those processes. *Id.* Moreover, Plaintiff claims that key factual disputes remain with regard to several issues, including whether the selection panel chosen to pick the candidate for the new GS–12 position was actually a "cover" for Lt. Col. Walker, who Plaintiff alleges was the true decision-maker. *Id.* at 8. Defendant argues, however, that the administrative record is sufficient in this case for the Court to rule on its Motion and that "the facts in this case lend themselves to immediate disposition." Def.'s Reply 4.

The Supreme Court has held that "federal employees are entitled to a trial *de novo* of their employment discrimination claims." *Chandler v. Roudebush,* 425 U.S. 840, 846, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) (reversing the lower court which had granted summary judgment against the plaintiff because "the absence of discrimination was firmly established by the clear weight of the administrative record"). Moreover, the Fifth Circuit has held that a grant of summary judgment based wholly on the administrative record may be "premature." *Eastland v. Tennessee Valley Auth.,* 553 F.2d 364, 370 (5th Cir.1977). The rules of discovery should be liberally construed, particularly in Title VII cases, "where procedural technicalities should not impede the vindication of guaranteed rights." *Id.* (citations and internal quotes omitted).

In addition, Rule 56(f) states:

**When Affidavits are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) deny the motion;

(2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3) issue any other just order.

Fed.R.Civ.P. 56(f).

Plaintiff has opposed Defendant's Motion in her Response but has provided no affidavit demonstrating it cannot currently present facts essential to justify its opposition. However, while "it is preferred that non-movants present an affidavit to support a continuance of discovery, there is no stringent procedure that will bar litigants access to further discovery." *Wichita Falls Office Assocs. v. Banc One Corp.,* 978 F.2d 915, 919 (5th Cir.1993). In order to trigger Rule 56(f), a party "need only submit an equivalent statement preferably in writing that conveys the need for additional discovery." *Id.* (citations and internal quotes removed). Such a continuance of a motion for summary judgment "should then be granted almost as a matter of course" unless "the non-moving party has not diligently pursued discovery of the evidence." *Id.* at 919 n. 4 (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1267 (5th Cir.1991) (citations omitted), *cert. denied,* 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992)).

In the instant case, there is no evidence that Plaintiff has failed to diligently pursue discovery of the evidence. This is true because at the time Defendant filed its Motion, the parties had yet to engage in formal discovery at all. The Court would be far more wary of any delay in ruling on Defendant's Motion had the time for formal discovery passed. However, given the current situation, the Court construes Plaintiff's Response as a statement equivalent to a motion under 56(f), and will permit parties to engage in discovery until August 26, 2008, as outlined in the Court's January 31, 2008, Scheduling Order.[17]

---

17. Defendant points out that it is "the established law of this Circuit that a plaintiff's entitlement to discovery prior to a ruling on a summary judgment motion may be cut off when, within the trial court's discretion, the record indicates that further discovery will not likely produce facts necessary to defeat the motion." *Rosas v. U.S. Small Business Admin.,* 964 F.2d 351, 359 (5th Cir.1992) (quoting *Fisher v. Metro. Life Ins. Co.,* 895 F.2d 1073, 1078 (5th Cir.1990)); *see also Int'l Shortstop, Inc.,* 939 F.2d at 1266–67 ("If the additional discovery will not likely generate evidence germane to the summary judgment motion, the district court may, in its discretion, proceed to rule on the motion without further ado."). Once again, it is unclear in the instant case whether discovery will produce facts necessary to defeat the motion because no discovery has been conducted. Defendant is free to renew its Motion if it can

## III. CONCLUSION

Accordingly, for the reasons set forth above, it is hereby **ORDERED** that Defendant's Motion (**Doc. No. 20**) seeking to dismiss allegations of a hostile work environment based on national origin be **GRANTED.** For all other issues raised in Defendant's Motion (**Doc. No. 20**), it is hereby **ORDERED** that Defendant's Motion be **DENIED.**

**SO ORDERED.**

demonstrate that any further discovery is likely to be redundant and unproductive.